NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0742n.06
Filed: October 6, 2006

No. 04-2420

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| TERI LYNN ENTERPRISES, INC., a Michigan corporation, TERI WOJAHN, and STEPHANIE NELSON , | ) ) ) ) | |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ROBERT J. PICKELL, | ) ) | |
| Defendant-Appellee, | ) ) | |
| CHARTER TOWNSHIP OF VIENNA and ANTHONY McKERCHIE, | ) ) ) | |
| Defendants. | ) | |

Before: BOGGS, Chief Circuit Judge; GIBBONS, Circuit Judge; and ROSE, District Judge.[*]

JULIA SMITH GIBBONS, Circuit Judge. Robert J. Pickell, the sheriff of Genesee County, Michigan, appeals the denial of his motion for summary judgment based on qualified immunity. A towing company and its officers sued Pickell in the United States District Court for the Eastern District of Michigan pursuant to 42 U.S.C. § 1983, alleging that Sheriff Pickell violated the First and Fourteenth Amendments by directing the Genesee County Sheriff's Department to use

---

[*] The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

-1-

other towing companies when it needed to tow vehicles. Finding that Sheriff Pickell's allocation of towing business violated clearly established constitutional rights of which a reasonable officer should know, the district court refused to grant him qualified immunity and denied his motion for summary judgment. We reverse because plaintiffs have come forward with insufficient evidence to permit a finding that Pickell violated their constitutional rights.

I.

Teri Lynn Enterprises ("Teri Lynn") is a towing company located in Vienna Township ("Vienna"), Michigan. Teri Wojahn is president and CEO of Teri Lynn, and Stephanie Nelson is its secretary/treasurer. David Wojahn, Teri's husband and Stephanie's father, is involved in the operation of the business, generally known in the area as Dave and Teri's. Teri Lynn has been in business for more than fifteen years and had considerable profits—as much as $500,000 per year—during a five-year period spanning the late 1990s and the early 2000s. Teri Lynn's success resulted substantially from a provision in a contract between Vienna and the Genesee County Sheriff's Department under which the Sheriff's Department provided law enforcement protection for Vienna. Prior to October 2001, the provision required the Sheriff's Department to use a towing company located in Vienna whenever it towed vehicles in the town. This requirement gave Teri Lynn a de facto monopoly because it was the only towing company in Vienna. In October 2001, Vienna changed this provision of its contract with the Sheriff's Department by vote of the township trustees. The new contract permitted the Sheriff's Department to tow vehicles from Vienna using towing companies located elsewhere in Genesee County.

Teri Lynn, Teri Wojahn, and Nelson brought this civil rights action against Vienna; its supervisor, Anthony McKerchie; and Sheriff Pickell. The plaintiffs claim that the government

contract was changed because David Wojahn engaged in protected speech and because Teri Lynn is owned and operated by women. The complaint alleges that defendants' conduct violated plaintiffs' First Amendment free speech rights and their substantive due process, procedural due process, and equal protection rights under the Fourteenth Amendment.

The alleged constitutional violations stem from an incident involving a disgruntled customer. The customer, after becoming angry about the price for retrieving his towed vehicle from Teri Lynn, uttered a vulgar gender epithet about Nelson. The customer's comment was captured on Teri Lynn's video surveillance system. After the customer complained about Teri Lynn's prices and service at a meeting of the township trustees, David Wojahn took the videotape to the Sheriff's Department in an effort to have the disgruntled customer prosecuted under a Vienna ordinance that prohibits the use of profanity in public places in the presence of women and children. The local prosecutor declined to prosecute, and the sheriff was also not interested in pursuing the matter. David Wojahn then asked McKerchie to view the videotape, which he did along with other Vienna officials and the plaintiffs. Plaintiffs present evidence that, after viewing the videotape, McKerchie pointed at Nelson and said, "Looks like there's your problem, you need to get rid of her and hire a man." McKerchie and other witnesses deny that McKerchie said this. The incident with the customer, the customer's complaint, and David Wojahn's activities regarding the disgruntled customer incident all occurred in July 2001, a few months before the change in the contract.

Various representatives of Vienna and the Sheriff's Department testified in depositions that there were complaints about Teri Lynn's towing charges, which are disputed but may have been as much as three times greater than those of other companies in some instances, and poor customer service. In addition to this testimony, the record contains independent evidence of at least two

customer complaints in addition to the one made in July 2001–one made at a trustee's meeting and one made by letter, both in August 2001. There was also evidence that the Sheriff's Department was frequently called to Teri Lynn, apparently to assist with the removal of personal property from towed cars. Given this situation, Vienna investigated the prices of other towing companies in the county and concluded that Teri Lynn's prices were likely higher. Vienna officials determined that the township should change the contract provision giving Teri Lynn a monopoly on towing in Vienna.

Vienna officials made Sheriff's Department representatives and Pickell personally aware of the reasons for the change. Sheriff Pickell did not participate in the negotiations for the new contract but agreed to it and signed it on behalf of the Department. McKerchie also communicated to Pickell that Vienna did not want to do business with Teri Lynn. While Pickell testified that he never directed the Department not to use Teri Lynn and some Department representatives thought that Teri Lynn was still being called along with other towing companies on a rotating basis, there is also evidence that the Department did not call Teri Lynn at all after the contract change.[1]

The contract change and its implementation caused a significant reduction in Teri Lynn's business. As a result, David Wojahn sought and obtained a meeting with Pickell to discuss the situation. Plaintiffs present evidence that during the time period after the contract change Pickell told David Wojahn that he worked for Vienna and Vienna officials had instructed him not to do business with Teri Lynn and also commented that "It's all politics . . . you know how politics is."

---

[1]Plaintiffs make much of a memo, not authored by Pickell, about which there was some deposition testimony indicating that the memo said that Sheriff's Department employees should not call Dave and Teri's. The memo itself is not in evidence, and the testimony about it is inadmissible hearsay. The only memo in the record establishing a protocol for calling towing companies is dated May 2003 and would not exclude Teri Lynn in all instances–for example, if the call was not a police impound and the customer preferred Teri Lynn.

-4-

Pickell denies the latter comment. His version of the first comment is that he told David Wojahn that his contract was with his customer, Vienna Township, and that if Vienna's elected officials did not want to do business with Teri Lynn due to its prices, that was fine with him.

II.

The district court granted summary judgment to all defendants on plaintiffs' substantive and procedural due process claims, finding that the evidence submitted by plaintiffs could not establish a violation of due process rights. With respect to the First Amendment and equal protection claims, the district court determined that plaintiffs had presented evidence from which a trier of fact could find in their favor. Thus, when the district court considered Pickell's qualified immunity argument, only the First Amendment and equal protection claims remained. On appeal, therefore, we deal only with those two claims.

"We review the district court's denial of defendant's claims that he is entitled to . . . qualified immunity *de novo,* as that issue is a question of law." *Spurlock v. Satterfield*, 167 F.3d 995, 1000 (6th Cir. 1999). Pickell asserted his claim of qualified immunity through a motion for summary judgment, and we review the district court's denial of that motion *de novo*, drawing all reasonable factual inferences in plaintiffs' favor. *Barnes v. Wright*, __ F.3d __, 2006 WL 1506714 (6th Cir. 2006). "'Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law.'" *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997) (quoting *Pusey v. City of Youngstown*, 11 F.3d 652, 655 (6th Cir.1993)).

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). We determine whether a government official is entitled to qualified immunity

through application of a three-part test:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff[s] [have] offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (alteration added). If we conclude that the

plaintiffs have failed to establish any of these three elements, qualified immunity must be granted.

*Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

In analyzing this appeal, we need not decide whether the district court was correct in its

conclusion that plaintiffs had presented evidence sufficient to survive summary judgment as to

defendants other than Pickell. The district court failed to examine the precise evidence relating to

Pickell himself, as is required when a defendant is sued in his individual capacity and not in his

official capacity as a policy-maker or decision-maker for Genesee County, *see Taylor v. Franklin

County, Ky.*, 104 F. App'x 531, 541 (6th Cir. 2004) (considering only the evidence adduced against

an individual defendant in determining whether that defendant was entitled to qualified immunity

rather than making the qualified immunity determination on the evidence accumulated against all

of the defendants), but instead considered collectively all the defendants and even representatives

of Vienna and the Sheriff's Department who are not defendants as a group. This failure led to a

qualified immunity conclusion that is flawed whether or not the district court's ruling as to the other

defendants was correct.[2]

To permit a finding that a First Amendment violation has occurred, plaintiffs must present evidence of a causal connection between any protected conduct and an adverse action. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394-95 (6th Cir. 1999) (en banc). In this record there is no evidence whatever that protected speech by David Wojahn or any plaintiff motivated Pickell to agree to the contract change or to stop doing business with Teri Lynn. Pickell's agreement to the contract change and the Department's refusal to do business with Teri Lynn are relevant to the issue of Pickell's participation in any adverse action but not to the issue of his motivation. Pickell's comments subsequent to the change permit no inference that the speech had any connection to the change; if anything the comments permit only the inference that Pickell acquiesced in Vienna's wishes without any improper motivation of his own. And plaintiffs do not argue that any inference arises from Pickell's disinterest in pursuing prosecution of the disgruntled customer. Plaintiffs thus cannot establish that Pickell violated their First Amendment rights.

The equal protection claim requires proof of purposeful discrimination. *Smith v. City of Salem*, 378 F.3d 566, 577 (6th Cir. 2004). Yet, its assertion of gender-based discrimination is supported only by the comment that McKerchie allegedly made concerning the replacement of Nelson with a man and the fact that females control Teri Lynn, while males own and operate the towing companies now towing vehicles in Vienna. McKerchie's comment cannot be attributed to Pickell, and a trier of fact could not find that Pickell intentionally discriminated on the basis of gender from the simple fact of a change from a female-controlled company to male-controlled

---

[2]We need not reach, for example, questions about whether the government employee speech cases relied on by the district court are appropriate in this context or what impact the fact that the speaker was David Wojahn, not the plaintiffs, has on the analysis.

companies. The first step of the qualified immunity analysis is not met because Pickell did not violate plaintiffs' equal protection rights.

III.

For the foregoing reasons, we reverse the judgment of the district court and enter summary judgment for Sheriff Pickell on the qualified immunity issue raised in this appeal.