NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 20a0007n.06

**Case No. 19-5252**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jan 08, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMES TRAVIS ADKINS, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MORGAN COUNTY, TENNESSEE, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| *Defendant*, | ) | |
| | ) | |
| KYLE SCHUBERT, | ) | O P I N I O N |
| | ) | |
| *Defendant-Appellant*. | ) | |

BEFORE: COLE, Chief Judge; SILER and MURPHY, Circuit Judges.

COLE, Chief Judge. During all times relevant to this case, Appellee James Travis Adkins was an inmate at the Morgan County Jail in Morgan County, Tennessee. Throughout the late spring and early summer of 2016, Adkins began experiencing back pain, which escalated in severity until he became incontinent and unable to move his legs. Alleging that jail officials were deliberately indifferent to his serious medical needs, Adkins sued Morgan County and several officers in their individual and representative capacities for violation of his constitutional rights under 42 U.S.C. § 1983. The district court granted qualified immunity to each defendant officer

except for Appellant Kyle Schubert, who now appeals that decision. We conclude that the district court correctly denied qualified immunity as a matter of law and, therefore, affirm.

## I. BACKGROUND

### A. Factual Background

Adkins's detention at the Morgan County Jail began on April 28, 2016, when he was sentenced for a probation violation. Starting in early June of that year, Adkins began experiencing minor back pain. Then, in July, that pain intensified to the point where he required medical attention, which he received at a hospital on July 15, 2016. After being examined by medical professionals, Adkins was prescribed medication to be taken four times per day to address the back pain and discharged. Upon his return to the jail, however, Adkins's pain did not subside. He was temporarily transferred to a different jail cell where jail officials might be better able to address the pain before being ultimately returned to his normal cell.

Adkins does not argue that any of the events up until this point amount to a constitutional violation. But then, when Adkins returned to his normal cell, his pain intensified, spreading to Adkins's stomach and causing him difficulty with moving his legs. Adkins also testified that he spent an entire night unable to sleep as a result of the pain. James Bridges, a fellow inmate, testified that Adkins became unable to walk and was incontinent shortly after returning to his cell on July 17, 2016. Bridges testified that, using the jail's intercom system, he advised an officer of Adkins's condition and stated that Adkins needed to be taken to the hospital. Bridges further testified that the officer responded to this information by saying that Adkins was "faking it" and did not take any additional action to address Adkins's medical condition at that time. (R. 92-5, PageID 572.) When asked to identify the officer to whom he spoke, Bridges testified that he was not positive,

but that he "believe[d] it might have been an officer named Kyle." (*Id.*) Bridges also testified that he informed the same officer of Adkins's condition face-to-face. (*Id.*)

When Adkins awoke the following morning, his legs were "completely numb" and he was unable to move them. (R. 92-2, PageID 520.) At that point, a jail officer brought Adkins to the hospital. At the hospital, doctors determined that he was "critically ill" and diagnosed him with a spinal abscess. (R. 92-2, PageID 552–53.) Adkins was then transferred to a different hospital for acute treatment. Doctors initially predicted that Adkins would never walk again, but after a two-month hospitalization, Adkins is once again ambulatory.

### B. Procedural History

Following these events, Adkins sued several jail guards, including Schubert, and Morgan County. Relevant here, he asserted claims against the various jail guards under 42 U.S.C. § 1983 for violation of his constitutional rights by exhibiting deliberate indifference to his serious medical needs and asked for attorneys' fees. All defendants moved for summary judgment and requested that the district court grant qualified immunity. The district court granted qualified immunity to all defendants except for Schubert. With regard to Schubert, the district court determined that the record reflected genuine disputes of material fact as to whether Schubert was entitled to qualified immunity. The district court found that the testimony from Bridges detailing his reports of Adkins's condition to an officer named "Kyle"—Schubert's first name—and the officer's response that Adkins was faking his condition created a genuine dispute of material fact as to whether Schubert was entitled to qualified immunity. Schubert then appealed.

## II. ANALYSIS

### A. Standard and Scope of Review

Our jurisdiction to hear an interlocutory appeal challenging a district court order denying qualified immunity is limited. The Supreme Court has held that the district court's denial of a claim of qualified immunity is an appealable final decision under 28 U.S.C. § 1291 "to the extent that it turns on an issue of law . . . notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). A district court's determination that the summary judgment record raises genuine issues of material fact concerning the movant's entitlement to qualified immunity, however, is not an appealable final order. *Johnson v. Jones*, 515 U.S. 304, 313 (1995). We have previously noted that allowing appeals of the district court's determination that the record could support a finding for the plaintiff would essentially result in courts of appeals rendering an assessment of the plaintiff's claims on the merits. *Berryman v. Rieger*, 150 F.3d 561, 563 (6th Cir. 1998).

Thus, a defendant bringing an interlocutory appeal of the denial of qualified immunity must do one of two things: (1) not dispute the facts alleged by the plaintiff for purposes of the appeal; or (2) if disputing the plaintiff's version of the story, concede the most favorable view of the facts to the plaintiff for purposes of appeal. *Bishop v. Hackel*, 636 F.3d 757, 764–65 (6th Cir. 2011). If the defendant refuses to accept the plaintiff's factual allegations for purposes of summary judgment or concede the most favorable view of the facts to the plaintiff on appeal, the court may still nonetheless ignore the defendant's attempt to impermissibly dispute the factual allegations and resolve any "purely legal" issues that remain, rather than simply dismissing the appeal for lack of jurisdiction. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). When we

turn to those issues of law, we conduct our review de novo. *Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

Schubert offers arguments concerning the reliability of Bridges's testimony and criticizes the district court's decision to credit that testimony for the purpose of its qualified immunity analysis. The limits on our jurisdiction at this stage in the proceedings, however, prohibit us from taking up these arguments. We are not permitted to engage with any attempts to litigate factual disputes, and we must view the testimony in the light most favorable to Adkins. *See Bishop*, 636 F.3d at 764–65. Similarly, we will not revisit the district court's weighing of the factual record. *Kirby v. Duva*, 530 F.3d 475, 480–81 (6th Cir. 2008). We may only review the legal underpinnings of the district court's qualified immunity determination given the facts before it. *See Harrison*, 539 F.3d at 517; *Estate of Carter*, 408 F.3d at 310. We do so below.

### B. Qualified Immunity Analysis

Our central inquiry is whether, given the facts viewed in the light most favorable to Adkins, the district court erred in denying Schubert qualified immunity. Qualified immunity is a personal defense that applies to government officials in their individual capacities, which shields said officials "from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (citation omitted). It exists to insulate government officials from "undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). When this court is confronted with an appeal of the denial of qualified immunity, it must decide two questions in the plaintiff's favor in order to affirm the denial of qualified immunity. First, do the facts, viewed in the light most favorable to the plaintiff, demonstrate that the defendant has violated a constitutional right?

Second, was the right in question clearly established at the time of the violation? *Morgan v. Fairfield Cty.*, 903 F.3d 553, 560 (6th Cir. 2018). Here, we answer both questions in the affirmative.

### i. Constitutional Violation

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Jail officials violate a post-conviction inmate's Eighth Amendment rights when they "unnecessarily and wantonly inflict[] pain on an inmate by acting with deliberate indifference toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). Under this court's precedent, a plaintiff claiming that prison or jail officials have violated the Eighth Amendment by way of deliberate indifference to serious medical needs "must satisfy an objective and a subjective component." *Baynes v. Cleland*, 799 F.3d 600, 618 (6th Cir. 2015) (internal citation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component of the deliberate indifference standard, a plaintiff must show "the existence of a sufficiently serious medical need, meaning that he is incarcerated under conditions posing a substantial risk of serious harm." *Baynes*, 799 F.3d at 618 (internal citation and quotation marks omitted). The seriousness requirement can be met either by a medical need "that has been diagnosed by a physician as mandating treatment" or by a medical need "that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison*, 539 F.3d at 518 (internal citation and quotation marks omitted).

The testimony from Bridges brings this case within our holding that a medical need can be sufficiently serious to satisfy the objective component when it is so obvious that even a lay person

would recognize the need for medical attention. *See, e.g., id.* Based on the testimony that Bridges informed Schubert of Adkins's condition, a jury could find that Schubert was made aware of Adkins's severe back and stomach pain, inability to walk, and incontinence and declined to take action until Adkins awoke completely unable to move his legs. We have previously held that symptoms similar in severity are indicative of a medical need obvious enough that a lay person should recognize the need for medical attention. *See Blackmore*, 390 F.3d at 897–900.

Turning to the subjective component, Adkins must show that the defendant both knew of and disregarded a substantial risk to the plaintiff's health. *Harrison*, 539 F.3d at 518. Again, we review the factual record in the light most favorable to Adkins. In doing so, we encounter evidence that Schubert was made aware of Adkins's difficulty walking and incontinence prior to Adkins awakening unable to move his legs and responded that he believed Adkins was "faking it."

Our precedent dictates that these facts, which suggest that Schubert was directly informed of Adkins's medical issues and did not act upon that information to ensure the provision of adequate medical care, are sufficient to satisfy the subjective component. In *Blackmore*, the court held that the "subjective component 'should be determined in light of the prison authorities' current attitudes and conduct.'" 390 F.3d at 895 (citing *Helling v. McKinney*, 509 U.S. 25, 36 (1993)). The district court found that, based on the testimony from Bridges, a jury could find that Schubert "had knowledge of a substantial risk of serious harm to Mr. Adkins." (R. 151, PageID 909.) This determination is supported by the record read in the light most favorable to Adkins. Thus, Adkins satisfies the subjective component of the deliberate indifference test.

Schubert advances several arguments to counter the conclusion that the record viewed in the light most favorable to Adkins could support a finding of a constitutional violation, none of which is persuasive. First, Schubert argues that he could not have been deliberately indifferent to

Adkins's serious medical need because Adkins was taken to the hospital on July 15, 2016, after complaining of back pain. Adkins was prescribed medication to address his pain, but his condition then worsened after his return to the jail. We decline to adopt an approach whereby an official's provision of medical care to an inmate in one instance shields that official from liability when he or she is deliberately indifferent to a later medical need that arises for the inmate. A prior examination by a doctor who had not considered the symptoms Adkins experienced when he returned to the jail does not excuse Schubert from an obligation to act upon reports of new symptoms that indicate the escalation of Adkins's condition.

Second, Schubert argues that because the underlying cause of Adkins's symptoms was a spinal abscess and a lay person would be unable to diagnose such an abscess, his condition was not readily apparent to a lay person. We have never held that a lay person must be able to medically diagnose the cause of obvious symptoms for a medical need to be sufficiently obvious for the objective component. To the contrary, we have routinely found that the objective component of the deliberate indifference test can be satisfied by record evidence of the symptoms that the plaintiff was experiencing. *See, e.g., Taylor v. Franklin Cty.*, 104 F. App'x 531, 538 (6th Cir. 2004) (finding that "incontinence and debilitating mobility were clear symptoms of a serious problem"); *Dominguez v. Correctional Med. Serv.*, 555 F.3d 543, 550–51 (6th Cir. 2009) (finding a constitutional violation based on a failure to act in light of "the apparent severity of [the inmate's] symptoms"); *Phillips v. Roane Cty.*, 534 F.3d 531, 540 (6th Cir. 2008) (finding that the symptoms experienced by the plaintiff were sufficient to satisfy the objective component of the deliberate indifference test).

Third, Schubert argues that Adkins is at fault for creating his medical need because his intravenous drug use, in Schubert's view, caused the medical condition that Schubert allegedly

ignored. Setting aside the lack of record evidence supporting this assertion, it is irrelevant to Adkins's constitutional claim at this stage. In assessing qualified immunity, we are asking only whether Schubert violated a clearly established constitutional right by being deliberately indifferent to Adkins's serious medical condition. Our inquiry does not encompass the complicated medical reason that may have given rise to a particular condition, as we are ill-equipped to make this determination and the cause of an ailment has no bearing on the appropriateness of a defendant's response to it. For instance, we have previously denied qualified immunity to defendants who failed to act upon an inmate's symptoms brought about by alcohol withdrawal when those symptoms were sufficiently serious to demand medical attention. *See Kindl v. City of Berkley*, 798 F.3d 391, 401–03 (6th Cir. 2015).

Fourth, Schubert emphasizes that this is a case about the delay, not denial, of medical treatment. As such, he contends that our holding in *Napier v. Madison Cty.*, 238 F.3d 739, 742–43 (6th Cir. 2001), requires Adkins to place verifying medical evidence that the delay caused by Schubert's failure to respond to the report of Adkins's symptoms made Adkins's condition worse. This argument relies on a misinterpretation of *Napier*. The requirement that a plaintiff present verifying medical evidence is limited "to those claims involving minor maladies or non-obvious complaints of a serious need for medical care." *Blackmore*, 390 F.3d at 898. Incontinence and inability to walk are hardly minor maladies or non-obvious complaints.

The court in *Blackmore* also raised an additional basis for rejecting Schubert's arguments. It held that "the test for deliberate indifference is whether there exists a '*substantial risk* of serious harm,' and does not require actual harm to be suffered[]" and that "[w]here the seriousness of a prisoner's needs for medical care is obvious even to a lay person, the constitutional violation may arise." *Id.* at 899 (internal citation omitted, emphasis in original). The court went on to hold that:

> This violation is not premised upon the "detrimental effect" of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, *their conduct in causing the delay creates the constitutional infirmity*. In such cases, *the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition*.

*Id.* (emphasis added). Put simply, a lack of verifying medical evidence concerning the effect of any delay does not support Schubert's assertion of qualified immunity.

### ii. Clearly Established Right

Finally, we ask whether the constitutional violation at issue in this case was of a clearly established right. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The Supreme Court has held that precedent directly on point with the factual circumstances of the instant case is not required for a right to be considered clearly established. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Existing precedent does, however, need to have "placed the statutory or constitutional question beyond debate." *Id.* A constitutional right can be placed beyond debate "from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012) (internal citation and quotation marks omitted).

We have encountered the denial of proper medical treatment to inmates on several occasions, many of which are analogous to this case. As an initial matter, it is clearly established that, generally, a failure to provide necessary medical treatment to those who are incarcerated can constitute a violation of the Eighth Amendment. *See, e.g., West v. Atkins*, 487 U.S. 42, 56–57 (1988).

Moreover, we have repeatedly held that an official who knows of, but does not respond to, serious medical needs similar to those exhibited by Adkins here violates the Eighth Amendment. In *Harris v. City of Circleville*, we held that a jury could conclude that a prison official was aware of facts indicating that an inmate had a serious medical need when the inmate was unable to move extremities and cried out in pain, among other indications. 583 F.3d 356, 368–69 (6th Cir. 2009). In *Taylor v. Franklin Cty.*, we found that an inmate's "obvious signs of recurring incontinence and debilitating immobility were clear symptoms of a serious problem, even if Defendants did not [choose] to believe Plaintiff." 104 F. App'x 531, 538 (6th Cir. 2004). We cited the holding in *Taylor* in *Blackmore*, when we held that officers were deliberately indifferent when they did not act upon an inmate's report of severe stomach pains resulting from appendicitis. 390 F.3d at 897; 899–900. Thus, we find that Adkins's constitutional right to receive adequate medical care given the symptoms he exhibited was clearly established.

## III. CONCLUSION

For these reasons, we affirm the district court's denial of qualified immunity.